IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM CAMPBELL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 19-CV-0578-GKF-JFJ |
| | ) |
| SCOTT CROW, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Before the Court is Petitioner William Campbell's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1).[1] Respondent Scott Crow filed a response in opposition to the petition (Dkt. 6). For the following reasons, the Court denies the petition.

**I.**

Campbell seeks federal habeas relief from the judgment entered against him in the District Court of Tulsa County, Case No. CF-2015-3492. Dkt. 1, at 1. In that case, a jury found Campbell guilty of first-degree murder, for fatally shooting Craig Wingard, and of feloniously pointing a firearm at Nicole Wells. *Id.* at 1, 17; Dkt. 7-9, Tr. Trial vol. 3, at 56 [288]; Dkt. 7-11, Tr. Trial vol. 5, at 53 [610].[2] As recommended by the jury, the trial court sentenced Campbell to life

---

[1] When Campbell filed the petition, he was incarcerated at the Lawton Correctional Facility, in Lawton, Oklahoma. Dkt. 1, at 1. The Court takes judicial notice of the website maintained by the Oklahoma Department of Corrections (okoffender.doc.ok.gov) showing that Campbell presently is incarcerated at the Davis Correctional Facility, in Holdenville, Oklahoma. The Court therefore directs the Clerk of Court to update Campbell's address to: Davis Correctional Facility, 6888 East 133rd Road, Holdenville, OK 74848.

[2] The Court's citations refer to the CM/ECF header pagination. When citing transcripts of state court proceedings or documents from the original record (O.R.), the Court also provides the original page numbers, in brackets, if the original page numbers differ from the CM/ECF header pagination.

imprisonment and a consecutive five-year prison term. Dkt. 7-12, Tr. Sentencing Hr'g, at 2, 21. Campbell claims his state-court judgment is subject to collateral attack in federal court because the trial court's refusal to give a jury instruction on the lesser-included offense of first-degree, heat-of-passion manslaughter deprived him of his Fifth and Fourteenth Amendment rights to due process and a fair trial. Dkt. 1, at 5-10.

Campbell and Crow agree, and this Court finds, that Campbell exhausted available state remedies as to the jury-instruction claim by presenting it to the Oklahoma Court of Criminal Appeals (OCCA) on direct appeal. Dkt. 1, at 5; Dkt. 6 at 2; *see also* Dkt. 6-4 (OCCA opinion); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (noting that 28 U.S.C. § 2254(b)'s "exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack"). Campbell and Crow further agree, and the Court finds, that Campbell timely filed his habeas petition. Dkt. 1, at 14; Dkt. 6 at 2; *see* 28 U.S.C. § 2244(d)(1) (establishing one-year statute of limitations for filing federal habeas petition under § 2254).

Campbell and Crow disagree, however, as to whether Campbell has shown that he should be granted federal habeas relief. Campbell alleges his custody under the challenged state-court judgment is unlawful based on the alleged due-process violation arising from the omitted jury instruction. Dkt. 1, at 5-10. Crow contends the trial court's decision to deny a requested instruction on a lesser-included offense involves a matter of state law that is not subject to federal habeas review. Dkt. 6, at 7-10. Alternatively, Crow contends that even if the alleged error is reviewable, 28 U.S.C. § 2254(d) bars relief because the OCCA reasonably concluded that the alleged jury-instruction error did not deprive Campbell of his constitutional right to a fair trial. *Id.* at 10-12.

2

## II.

The OCCA concluded on direct appeal that the trial court did not abuse its discretion in denying Campbell's request for a jury instruction on the lesser-included offense of heat-of-passion manslaughter. Dkt. 6-4, at 2-3. Applying state law, the OCCA reasoned that that instruction should be given when there is evidence of "adequate provocation" that would cause a "reasonable person" to be unable "to control himself under the circumstances." *Id.* After reviewing the "entire record on appeal," the OCCA summarized its view of the evidence as follows:

> [Campbell] was convicted of fatally shooting Craig Wingard on a residential street while Wingard and [Campbell's] step-mother were engaged in a dispute. [Campbell] walked inside his step-mother's home, returned with a rifle, and fired eight rounds at Wingard at relatively close range. There was no evidence that Wingard was armed with any sort of weapon, or that he had made any threatening gestures toward anyone. When Wingard's companion screamed for help, [Campbell] said, "Bitch, if you don't shut up, you're next," then left the scene. In a custodial interview, although he denied intending to kill Wingard, [Campbell] admitted to the shooting and told police he was sober and in complete control of his faculties at the time.

*Id.* at 2. Ultimately, the OCCA concluded that the "trial court's ruling that the facts did not reasonably support a finding of 'adequate provocation' was not clearly against the logic and effect of the evidence presented." *Id.* at 3.

When, as here, a state court has adjudicated the merits of a petitioner's claim, the petitioner bears the burden to show, as a precondition to obtaining habeas relief, that the state court's adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). This places a heavy burden on a habeas petitioner and, as Crow contends, Campbell cannot establish either precondition to relief on the record presented.

A.

When § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). "[W]ithout clearly established federal law, a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *Id.* at 1017. Campbell cannot satisfy his burden under § 2254(d)(1) because there is no clearly established federal law that requires a state trial court presiding over a noncapital case to instruct the jury on lesser-included offenses. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (noting that "[t]he Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases"); *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) (explaining that "a petitioner in a non-capital case is not entitled to habeas relief for failure to give a lesser-included offense instruction even if in [the federal court's] view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense"). As a result, § 2254(d)(1) bars habeas relief because Campbell cannot show that the OCCA's decision either is contrary to or involved an unreasonable application of clearly established federal law.

B.

Under § 2254(d)(2), the petitioner must show that the state court's decision is based on an unreasonable factual determination. "A state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159,

4

1170-72 (10th Cir. 2011)). Critically though, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Moreover, a federal court "must presume the state court's factual findings to be correct unless the petitioner rebuts the presumption with clear and convincing evidence." *House*, 527 F.3d at 1019 (citing 28 U.S.C. § 2254(e)(1)).

As the Court understands it, Campbell's argument is that the OCCA either misapprehended or misstated the record when it concluded that the trial court did not abuse its discretion by declining his request for a jury instruction on first-degree, heat-of-passion manslaughter. Dkt. 1, at 5-10. Campbell contends that statements he made to detectives after his arrest supported giving that instruction. *Id.* at 6. He expressly asks this Court to consider evidence of Wingard's "very aggressive actions," immediately before the shooting, of (1) approaching the car occupied by Campbell and his step-mother, Sarah; (2) "arguing loudly" with Sarah and demanding that she return personal property that she had taken from Wingard; (3) taking Sarah's keys from the ignition of the car through Sarah's open driver's side window; (4) attempting to open the driver's side door; (5) attempting to open the hatchback of the car; (6) telling Sarah she could not leave until she returned Wingard's property; (7) refusing to return Sarah's keys after Campbell pointed a rifle at Wingard and repeatedly requested that Wingard return the keys; and (8) using offensive language toward Campbell in stating his opinion that Campbell would not shoot. Dkt. 1, at 6-8. Campbell also emphasizes that he was only 17 years old when he shot Wingard, that Wingard should have de-escalated the situation by returning Sarah's keys, and that Wingard allegedly "committed several felonies during the course of his behavior." *Id.* at 8-9.

Like the OCCA, this Court too has reviewed the entire record. Campbell is correct that evidence presented at trial shows that Wingard initiated contact with Campbell and Sarah when

5

Sarah drove up to their house, that Wingard took Sarah's keys and threatened to keep them until she returned his personal property, and that Wingard emphatically expressed his opinion to Campbell that Campbell would not shoot him. Dkts. 7-9, 7-10 (trial transcripts); Dkt. 8 (State's Ex. 55, DVD of Campbell's post-arrest interview with detectives). But the record also shows that neither the trial court nor the OCCA misapprehended or misstated the record when it evaluated whether the evidence was sufficient to instruct the jury on first-degree, heat-of-passion manslaughter.

Under Oklahoma law, "[t]o warrant an instruction on first degree heat of passion manslaughter, there must be evidence that the defendant killed the deceased with adequate provocation, in a heat of passion, without the design to effect death." *Davis v. State*, 268 P.3d 86, 118 (Okla. Crim. App. 2011) (citing Okla. Stat. tit. 21, § 711(2)). "The passion necessary to support a manslaughter instruction must be so great as to render the mind incapable of forming a design to effect death." *Id.* at 118 (citation and internal quotation marks omitted). Significantly, whether a defendant was adequately provoked "is measured by an objective test of reasonableness." *Id.* Thus, "[i]n determining whether the deceased's conduct was adequate provocation, the conduct is judged as a person of reasonable intelligence and disposition would respond to it." *Washington v. State*, 989 P.2d 960, 968 n.4 (Okla. Crim. App. 1999).

> Mere words alone, or threats, menaces, or gestures alone, however offensive or insulting, do not constitute adequate provocation. However, words, threats, menaces, or gestures, when considered in connection with provoking conduct of the deceased, may constitute adequate provocation. Personal violence or aggression by the deceased of a nature sufficiently violent to cause or threaten to cause pain, bloodshed or bodily harm to the defendant may be adequate provocation.

*Id.*

Here, during the jury instructions conference, Campbell's lawyer vigorously argued to the trial court that evidence of Wingard's actions immediately before the shooting warranted jury

6

instructions on second-degree murder, first-degree, heat-of-passion manslaughter, and first-degree manslaughter based on resisting criminal activity. Dkt. 7-10, Tr. Trial vol. 4, at 76-126 [507-57]. After considering the evidence presented at trial, the parties' opposing arguments, and Oklahoma law, the trial court concluded that the evidence supported giving an instruction on second-degree murder but did not support giving an instruction as to either alternative of first-degree manslaughter. *Id.* In this proceeding, Campbell challenges only the trial court's refusal to give the heat-of-passion instruction. Dkt. 1, at 5-10. As to that instruction, the trial court reasoned that while Wingard effectively "dare[d]" Campbell to shoot him by saying, "fuck you, you're not going to shoot," neither those words alone nor those words combined with Wingard's allegedly "aggressive" actions immediately before the shooting were sufficient to show the adequate provocation necessary to support giving the instruction. Dkt. 7-10, Tr. Trial vol. 4, 95-99 [526-30], 124 [555]. The trial court noted that the evidence was "pretty much uncontroverted" that after Wingard approached the car and began to argue with Sarah, Sarah told Campbell "it's cool" and to go inside the house and get his phone, and Campbell came back outside with a rifle and shot Wingard as Wingard was walking away from Sarah. *Id.* at 98. Campbell's own statements during his post-arrest interview, a recording of which was presented to the jury, suggest that the primary "provocation" for Campbell was Wingard's refusal to return Sarah's keys. Dkt. 8, State's Exhibit 55. And it was reasonable for the trial court to conclude that neither the refusal to return Sarah's keys nor Wingard's stated opinion that Campbell would not shoot him would cause a person of reasonable intelligence and disposition to fire eight shots at Wingard.

More importantly for this Court's analysis, it was objectively reasonable for the OCCA to determine, after its review of the entire record, that the evidence presented at trial supported the trial court's decision not to give the heat-of-passion instruction. Having independently reviewed

7

the entire record, this Court finds ample support for the OCCA's summary of the facts. As the OCCA stated, Campbell told detectives that he was "sober and in complete control of his faculties" when he "fired eight rounds at Wingard at relatively close range," while Wingard was unarmed, in response to Wingard's heated exchange of words with Sarah and Wingard's refusal to return Sarah's keys. Dkt. 6-4, at 2. On the record presented, the Court finds the OCCA reasonably determined that "[t]he trial court's ruling that the facts did not reasonably support a finding of 'adequate provocation' was not clearly against the logic and effect of the evidence presented." Dkt. 6-4, at 3. Further, the fact that the OCCA did not explicitly discuss the evidence Campbell cites in his habeas petition when it made its decision does not mean that the OCCA either misapprehended or misstated the record in rendering that decision. Rather, the OCCA reasoned that the evidence, in its entirety, did not show adequate provocation and thus supported the trial court's denial of Campbell's request for a heat-of-passion instruction. While Campbell disagrees with both the trial court's and the OCCA's assessment of the evidence, his disagreement does not establish that the OCCA's decision rests on an objectively unreasonable determination of the facts presented in state court. As a result, § 2254(d)(2) bars habeas relief.

### III.

For the reasons just discussed, the Court concludes that 28 U.S.C. § 2254(d) bars habeas relief. The Court thus denies Campbell's petition for writ of habeas corpus. The Court further concludes that Campbell has not presented any issues that would warrant granting him a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) (providing that a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (explaining that a habeas petitioner can make the showing required by § 2253(c)(2) by demonstrating "that reasonable jurists

8

would find the district court's assessment of the constitutional claims debatable or wrong"). The Court therefore declines to issue a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall update Campbell's address to: Davis Correctional Facility, 6888 East 133rd Road, Holdenville, OK 74848.

2. The petition for writ of habeas corpus (Dkt. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 7th day of November 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE